## SUPREME COURT.

THE BUFFALO LUBRICATING OIL COMPANY, limited, agt. HIRAM
B. EVEREST and another.

*Practice— New trial— When will be granted on the ground that the damages
found by the jury are excessive.*

Granting new trials on the ground that the damages are excessive, in cases
where the jury are allowed to award smart money, is comparatively a
modern practice, and had its origin in the English courts.

In cases where the court can see, without mistake, the amount mentioned
in the verdict as punative damages, it is now the universal practice to
examine the whole case with care, and determine whether the sum so
included is so large as to shock the judgment of most intelligent and dis-
passionate men.

Where, as in this case, there is no chance for mistake, and the jury did
allow $16,000 as smart money as a punishment to the defendants for en-
ticing away a servant from the plaintiffs who at the time he left its
employ, was one of its stockholders and chief executive officers, a new
trial should be granted on the ground that the damages are excessive.

*Erie County Special Term, February,* 1886.

MOTION by the defendant for a new trial, founded on excep-
tions taken to rulings on the trial, and also upon the ground
that the damages are excessive. The verdict was for $20,000.

*William F. Cogswell,* for the motion.

*Adelbert Moot,* opposed.

BARKER, J. — The plaintiff is a corporation organized under
the general statute for the purpose of refining petroleum oil, its
place of business being the city of Buffalo.

The action is in tort.

The complaint charges that the defendant, with malicious
motives, and with intent to injure, destroy and break down the

plaintiff's business, did persuade and entice from the plaintiff's service its servant, one Albert A. Miller.

The defendants are stockholders in, and the executive officers of, the Vacuum Oil Company, also engaged in refining oil, at the city of Rochester.

The plaintiff commenced operations in June, 1881, by planning, locating and constructing its works.

Miller had large experience in the business, and it was conceded that he was well-qualified to plan and superintend the construction of the works.

He was one of the promoters of the company, a stockholder and its vice-president. By an arrangement or understanding with the managing board, he was to act as superintendent in constructing the works, and in manufacturing the oil, and was to be allowed $1,200 a year for his services.

About the time the works were so far completed as to commence distilling oil, and about the first of July of the same year he left the plaintiff's employment, and, in September, sold out all his interest in the company, and ceased to act as one of the officers, or to have any connection with the company. The stock and interest held by Miller in the company was, at that time, transferred to the company by an arrangement with the active officers and managers of the company, and he was informed by them that the company had no further need of his services.

The plaintiff gave evidence tending to show, that Miller left the plaintiff's employ on the joint solicitation of the defendants, and that they acted from malicious motives, hoping to injure the plaintiff's business, delay its successful operations, if not to break down the company.

The court instructed the jury as to the rules of law applicable to the case, by which they would be guided in ascertaining the plaintiff's actual damages, as to which the defendants took no exception, but the plaintiff did several.

The court also instructed the jury, in substance, that the case presented such circumstances and features that they might, in their discretion — in addition to the plaintiff's actual damages,

as they should determine them to be—add exemplary or punative damages, for the purpose of punishing the defendants for their unlawful and malicious conduct, and for example's sake, if, in their opinion, the plaintiff's actual damages were not a sufficient punishment for their wrong-doing, but that, in considering the question, they should act with the greatest caution and circumspection.

By the rule adopted by the court, in the charge to the jury, by which the plaintiff's actual damages were to be measured, they could not, in any event, exceed $4,000, according to the whole evidence bearing on that subject.

So, it appears, beyond all controversy, that the jury awarded by their verdict $16,000 as smart money.

In disposing of the question whether the damages are excessive or not, it must be assumed that the jury followed the directions of the court in determining the plaintiff's actual damages. Any other view of the case would altogether deprive the defendants of their point, that the damages are excessive.

The party who has lost the verdict was content with the rule of damages adopted, and for the court now to hold as the plaintiff argues, that the rule was unfair and erroneous so far as the plaintiff's rights were involved, and the jury were justified in disregarding the instructions of the court, and did adopt and follow a rule of their own in ascertaining the plaintiff's actual damages, would be unfair to the defendants, and has no sanction in precept or practice. If the plaintiff has confidence in the exceptions, which were taken in its behalf to the rule of damages laid down in the trial, and feels aggrieved and injured thereby, it should move thereon for a new trial. By the exceptions taken, a means of review is secured in all the higher courts.

Our system of jurisprudence is based upon the fundamental proposition that the court, and the court alone, decides all questions of law; and it necessarily follows from this that, if the jury disregard the instructions of the court on any question of law, their verdict will be set aside. It is by this power, and the

exercise of it by the court, that the control of the court over questions of law can be preserved.

Therefore, if it could be discovered that the jury did disregard the instructions, as the rule by which the actual damages were to be ascertained, it would be the duty to grant a new trial for that reason.

The plaintiff, as a matter of law, was entitled to all his actual damages and more — not one dollar.

There is also another valuable and well-established rule, that, in cases of trespass or tort, accompanied by fraud, malice or oppression on the part of the wrong-doer, the jury have a discretion to award exemplary or vindictive damages. The case at bar is one of this class of actions, if the plaintiff is entitled to recover anything for actual damages.

I am fully persuaded, however, after the most deliberate consideration of the question, that the sum awarded as punative damages is so extravagant and excessive as to indicate that the jury were guided in their action by prejudice, passion or sympathy. They had fixed the plaintiff's actual damages, as we may assume, at the utmost limit permitted by their instructions, and to that sum they added the four-fold sum of $16,000.

In this case, unlike many others, we can ascertain the amount of the punative damages assessed by the jury above the actual injury sustained.

The power and the duty of the court to interfere and grant new trials where the damages are excessive, is fully established in the jurisprudence of this state. At the same time, the verdict of the jury should not be interfered with lightly, nor until the mind of the court is seriously impressed that the punishment imposed by the jury on the wrong-doer by their verdict is oppressive and unreasonable, and more than jurors usually award in like cases, and beyond what the courts are accustomed to approve (*Houghkirk* agt. *Delaware and Hudson Canal Co.*, 92 *N. Y.*, 225).

I do not cite any of the cases where the courts have granted or refused to grant new trials on this ground. I have, I be-

Buffalo Lubricating Oil Company agt. Everest.

lieve, in my examination, read every leading case decided in England or in this country, and I find none which can be cited as a precedent for denying the defendant's motion, and allowing this verdict to stand. Granting new trials on the ground that the damages are excessive—in cases where the jury are allowed to award smart money—is, comparatively, a modern practice, and had its origin in the English courts. In cases where the courts can see, without mistake, the amount mentioned in the verdict as punative damages, it is now the universal practice to examine the whole case with care, and determine whether the sum so included is so large as to shock the judgment of most intelligent and dispassionate man.

This case is to be distinguished from a class of cases like libel and slander, assault and battery, seduction and *crim. con.*, where sentiment and feeling are largely involved, and it is, therefore, quite impossible for the court to separate the sum of actual damages from the verdict, and thus discover the real sum awarded as a punishment to the defendant.

In this case there is no chance for mistake. The jury did allow $16,000 as smart money as a punishment to the defendants for enticing away a servant from the plaintiff, who, at the time he left its employ, was one of its stockholders and chief-executive officers. Miller, himself, was one of the board of trustees, who had a right to decide whether a servant in the employ of the company should remain or be discharged.

I do not consider the exceptions taken by the defendants, but grant the order for a new trial on the ground that the damages are excessive.

New trial granted on the defendants paying the taxable costs of this action, after notice of trial, including the costs of this motion, together with disbursements, to be paid within twenty days after taxation and notice, and, if not paid, motion denied with costs.